This is 0735360 Native Ecosystems Council v. Kimball. Each side has 20 minutes. I'll get Mr. Woodbury back again. Okay, so in this case, I hopefully can deal with the issue of vacature quickly and get on to other issues. And part of the reason I would like to do that is I think the briefing was actually quite sufficient on the issue of vacature. And also, I highly suspect that the three judges here and all their law clerks probably got higher grades in civil procedure than I did in law school. So I really don't want to try to lecture you on the limits of your jurisdiction or the administration of justice and so forth. But on the issue of vacature, all I want to point out is that there's two procedural issues, actually. The first is the issue of vacature and whether, you know, under the APA, when you challenge a final decision and the record supporting that decision is inadequate, whether it should be vacated. And the second issue is the sort of related NEPA issue of following the procedure for supplemental EISs once EIS is found effective versus substituting the kind of procedure that the court did here. If the panel agrees with us on either of those procedural issues, then that would actually – you should actually say that now because it will save us the trouble of discussing all the subsequent substantive issues. Well, what – I mean, this was an unusual case because Judge Malloy did not let the plan go forward. He enjoined it. Yes. So the difference between that and vacature is fairly ephemeral. I mean, in the sense that he said you can't implement it until you do what you're supposed to do. And they did what they were supposed to do. And had they concluded the opposite of what they concluded, they would have themselves had to vacate their decision. So what functional difference does it make? The functional difference is that they didn't reopen the decision-making process and they didn't issue a new record of decision. Therefore, if Judge Malloy's order is affirmed, then the project – or actually the project is going forward under a defective record of decision. But if he had vacated it, wouldn't exactly the same thing have happened? If the – every other case – I've been doing this litigation for about a dozen years, and every other case I've ever had where we prevail and EIS is found to be deficient, the court vacates the record of decision and – I know. I'm just trying to figure out what difference – a practical difference it makes. Yeah. Remands to the agency to go back and comply with the law and do NEPA analysis, and then the agency is free to initiate everything except scoping. They're free to initiate a supplemental EIS process, involve the entire public, not just the public that's involved in litigation, and reconsider the wisdom of their decision. But didn't they publish it in the same way as – didn't they treat it as supplemental EIS? No. Why not? Well, they didn't for – if they treated it as a supplemental EIS. If Judge Malloy had done what I just referred to, then they went back and did the study on soils, and then they said, you know, okay – and then they said, okay, now we think the – with the supplemental EIS that the decision can go forward. This is the supervisor, the same supervisor that made the original decision, and that's in court. Then we could appeal that decision to the regional forester and say, you know, first of all, we think that he's wrong on soils, and second of all – So that's what I'm trying to get at. So is that where you're seeing the practical on-the-ground difference? Yeah, because the judge has basically put himself in the position of the regional forester, and the difference there is – Administrative appeal out of it is what your complaint is. Right, because when we go to the – in our region, at least, a lot of things are resolved at the regional forest level. They have appeal resolution conferences. There are – the parties make significant compromises in that situation, and the regional forester has lots of expertise available to him that the judge doesn't, and he's not constrained by a standard of deference. All right. There's a regulation – The forester doesn't defer to the supervisor's decision. All right. There's a regulation, section 25.12, decisions and actions not subject to appeal. This is a Forest Service regulation, as I understand it, and one of them is a determination with documentation that a new decision is not needed following supplementation of an environmental impact statement or a vision of an environmental assessment. So why isn't that governing here? Basically, what that's – that's referring to the process of the purpose of the supplemental report. It's the same – this is referring to the same process that was followed in Idaho's Boarding Congress versus Alexander, where they do a supplemental study, and then they decide, well, the decision – It's not necessary to do a supplemental EIS because we don't find significance there. Supplementation of an environmental impact statement is not the same as a supplemental EIS? I'm sorry? Supplementation of an environmental impact statement is not the same as a supplemental EIS? No, they do supplemental – if I recall the regulations that you're referring to, they are the regulations for determining whether a supplemental EIS is necessary or not, and they do supplemental information reports. All decisions and actions are not subject to appeal under this part, and one of them is a determination with documentation that a new decision is not needed following supplementation of an environmental impact statement. That would – I guess I don't – I'm not – You're saying Idaho's Boarding Congress doesn't permit them to do what they did, isn't that the answer? DEPA doesn't allow – if there is significant new information and significant change circumstance, and you do a supplemental environmental impact statement, then you have to issue a record of decision. The CEQ regulations are clear on that. I'm not exactly sure the context of what you're referring to. I thought it was what they raised in the response brief, and we replied to in a reply brief as basically the assumption being that it's not significant new information, and therefore a new decision is not required. Was the supplemental soil study put out for comment? It was. And published in the Federal Register? It was. Why isn't that functionally the equivalent of a supplemental? For the same reason – the same procedure was followed in ISC versus Alexander, and for the same reasons there. They didn't reopen the decision-making process. They didn't allow an appeal of the final decision. Well, they allowed comment. Sure. Yeah. Well, doesn't that indicate they reopened the decision-making process? No. They're going to receive comment and proceed from there. No. What would indicate that they reopened the decision-making process is that they issued a new decision. They did not. We still have the same record of decisions that we challenged. Suppose they put out a second piece of paper. What's missing here is a second paper that says – Anything that we could appeal to the Regional Forester's Office. That's right. So they got comment, then they made some changes in response to the comment, and your view is that at that point they would have an amended decision that would be subject to administrative appeal. A new record of decision. There is no provision under NEPA for amended record of decision. You have to issue a new record of decision. Well, there's no provision under NEPA for a record of decision at all. NEPA doesn't talk about records of decision. That seems to be just a convention, as I understand it, about how agencies make decisions. But NEPA doesn't require a separate piece of paper like that, does it? Well, then it must be – I'm not sure. I may be confused with the Forest Service's own rules implementing NEPA then. Whether it's in the CEQ rules or the Forest Service rules, there's definitely a regulatory requirement, which this Court recognized in ICV Alexander, for a new record of decision after a supplemental EIS is prepared on a defective EIS. And, you know, under the APA, I believe it may be actually the APA that requires a record of decision. In this case, I'm not sure, but under the APA, that's what we challenge. We have to await the record of decision. That's what we challenge in court. And if it's found defective, the APA says that you're required to vacate it or set it aside. Let me ask you, just assume for the sake of discussion that what they did file was adequate. Okay, no, that's not your view of it, but let's just assume for the sake of discussion it is. What about the merits? Are you finished then on the merits? Are you talking about the merits of the soils issue or the merits altogether? Well, I guess both. Okay. No, I would like to address the merits. Would you? Okay, so we'll assume that. The main issue I would like to address on our substantive claims is actually regarding the pine marten, which is a management indicator species in this case for precisely the type of habitat and habitat alteration that was approved in the Basin Creek project area. And this is, you know, they have no population monitoring data for the pine marten in this forest. So they're using a proxy approach of assuring viability through habitat. And what the record shows and is very clear from the science is that marten populations are reduced by 90 percent once an area is logged. And most log over sites do not provide the structural diversity offered by unlogged areas for the pine marten. So a 90 percent drop in population is below viability. The Thomas 1979 science that the Forest Service references in its response brief says that anything below 40 percent is considered to be non-viable. They didn't consider this? Sorry? You're saying they didn't consider this? What they said was that, you know, they're doing about two square miles of clear cuts in this basin. And in analyzing the impacts on pine marten, they said, well, it's not significant because there's plenty of pine marten habitat elsewhere. The way they showed that was by showing how much mature and over mature forest there is elsewhere in the forest, without any regard to whether it's outside of this unsuited area of the forest, without any regard to whether that forest has been logged or not. Most of the, we maintain that a large percentage of that forest has been logged over because it's in the areas of the forest that are open to commercial logging. And therefore, it's critical to know how much of that mature, over mature forest has actually been logged or not because the areas that have been logged are not suitable habitat. And the Forest Service assumed that it's all suitable habitat. And the other thing about marten that's, the pine marten that's critical is connectivity of habitat. As this court recognized, a basic factor in viability analysis in Idaho Sporting Congress versus Rittenhouse, and this is based on Forest Service's own statement, is whether the isolated populations can find each other, whether they have a way of interbreeding because otherwise they get isolated and they genetically deteriorate and become non-viable. So number one, we need to know how much of that forest that they're saying is ensuring the viability of marten has been logged over and therefore has 90% reductions in population. And number two of the unlogged areas that are still good pine marten habitat is their connectivity. And this was raised consistently throughout the process and never addressed. And there's a, I think we might have cited on this issue and some of the other issues to the Ecology Center of the Austin case that has since been reversed. But on this particular issue and these rationale, I'm discussing Earth Island Institute, which we also referenced versus U.S. Forest Service, the 2006 case, is controlling, as is Native Ecosystems Council case referenced in Earth Island. And also a more recent case that followed briefing in this case, and I'll leave a supplemental site with the clerk, Oregon Natural Resources versus Goodman, September 2007 case and a decision involving the fisher, which is a very closely related species to the marten. They usually inhabit similar. And in that case, the court, Judge Mylon Smith actually found that failure to adequately explain habitat suitability methodology plus the absence of local population data means that they're not complying with the National Forest Management Act. And that's exact. In this case, we not only have a failure to adequately explain the suitability methodology, it's totally conflicted in the record by substantial evidence and science saying that it's not good. You can't call all mature forest suitable habitat since if it's been logged, if it's logged mature forest, then it's been reduced 90 percent. The habitat suitability has been reduced 90 percent. I just want to go back to our original discussion about the judge, in effect, retaining control by his vacature approach. Did you actually file any appeal from the administrative order after the changed soils analysis? Did you file an administrative appeal? Well, it went back in the court, and we had two rounds of briefing on it. No, no, no. That's not my question. I mean, I know that you disagree with how the judge did it procedurally. I'm asking, did you at any time file? There was no there was no new decision issued. So there was nothing. There was no final action that we could have appealed. Can I save the rest of my time for rebuttal? Thank you. Please, the court. I'm John Arvab on behalf of the Forest Service. Excuse me. With me at counsel table is Julie Weiss, representing the intervener in this case, City County of Butte, Silverboro. I will be arguing for 12 minutes, and Ms. Weiss will be taking eight minutes. I'd like to begin by addressing the issues that Mr. Woodbury raised and which the court questioned him on. First of all, with regard to the vacature issue, I think that the court has put its finger on what this issue ultimately boils down to, and that is did the district court's decision not to vacate the rod, but rather to issue an injunction against the project, a remand to the agency to correct the defect, the limited defect that the court had identified with respect to soils, and then leave it open to the agency to come back to the court to convince it at a later time to dissolve the permanent injunction, if it could show that it had complied with environmental laws. What happened in Idaho Sporting Congress? Your Honor, Idaho Sporting Congress involved the so-called supplemental information reports. The way that the agency cured the soils problem in this case was not to use a supplemental information report. It was to supplement the final environmental impact statement through the very NEPA process that the NEPA regulations call for. What's the difference between a supplemental information report and what you folks did? What's the difference? The essential difference is that what the agency did here was to supplement the EIS in the formal way that is required by the NEPA regulations and which is not done when a so-called SIR is prepared. But the SIR, as I understand it, in Idaho Sporting Congress was circulated, and the public was given an opportunity to comment, and the problem the court found on it was that they do not remedy the fact that at the time the Forest Service originally approved the timber sales, it did not have available all the information and analysis that it should have considered. And it was a timing problem. And isn't exactly the same problem here that if you don't lift the decision and instead you go back and issue something called an EIS, supplemental EIS, but you don't actually redo the decision, then you essentially are sitting on a decision that was made before you had this additional information. It just seems contrary to what NEPA is all about. NEPA is about taking everything into account when you make the decision. Your Honor, NEPA, the regulations of NEPA clearly indicate that final EISs can be supplemented. And the notion that this somehow, that this new information was somehow illegitimate because it was not before the decision-maker initially runs contrary to the whole purpose for it. No, no, but the point is now they have all the information, right? And they say, well, you know, it's the same decision because I have more precise information and it just reinforces my decision. So that's permitted. But the question is, should you be permitted to run an administrative appeal from that decision? Your Honor, I think that the Court has put its finger on exactly what this boils down to. Was NEC entitled to an administrative appeal at the point after the remand, or was it not? Well, there were sort of two issues. I mean, that's one, and I'd like your advice about what seemed to me to be somewhat conflicting directives and what seemed to be the documents that apply to that question, which are Forest Service questions. NEPA doesn't have an administrative appeal, right? That's correct. So that's not the problem. But there are Forest Service regulations. That is correct. But the sort of more conceptual question is, if you have at the time you make a decision, an inadequate EIS, and you then go back to supplement the EIS, can you do that and never actually administratively reconsider the decision? Your Honor, that was done here. When was it done here? After considering the soils report. And this is contrary to NEC's representation, I believe, in its reply brief. The Forest Service did give further consideration to its original decision to go forward with the project, and it reaffirmed that decision. Where? The soils report states that, quote, the soil impacts and conclusions in the Basin Creek FEIS are confirmed. That's at SER, Federal Appalachee Supplemental Excerpt of Record, at 109. The forest supervisor made a specific written determination that, quote, a new or modified record of decision is not needed for the Basin Creek hazardous fuels reduction project. He stated that the project, quote, can proceed under the existing record of decision. That's at SER 123. And, indeed, he stressed that the project should go forward. So can you stop there? What's the existing record at that point? Is it the old record plus the new soils analysis? It's the original FEIS plus the supplemental to the EIS on soils. Right. But let me just ask you, if that were the case, then you could come up on appeal. You can have four, five, or six deficiencies in baseline ES issues. The district court could remand to see if they could be fixed or not. And the agency says, well, I'm going to go get some more information. And I look, and I've supplemented my information, and I come to the same decision. Fair enough. But you then never get an administrative appeal on this so-called existing, what you call the existing record, which is really the old record plus the new record. Your Honor, that's because the Forest Service regulations that govern appeals don't permit an appeal in the situation that we have presented here. And let me take a moment to explain. Can you let him explain first? Let's hear your explanation. It may help if I could explain. First of all, the governing regulation is 36 CFR 215.12B. And you can find it. Again? Yes, 36 CFR 215.12B. And it's reproduced. That's what I read before. Really? Yes. Okay. It's reproduced at addendum 12 to the government's brief. That provision plainly states that there is no opportunity for an administrative appeal from, quote, with documentation that a new decision is not needed following supplementation of an environmental impact statement. That is exactly what we have here. Now, Mr. Woodbury's counter- That's my question. All right. Let him finish, though. I want to understand his answer. Yes. Mr. Woodbury's only counter-argument to the argument I've just presented is that Section 215.12B refers to a provision of the Forest Service Handbook, or FSH. This FSH provision merely says, quote, after completion of the final supplement or final EIS, issue a new record of decision consistent with the scope of the supplement or revision. This FSH provision doesn't help NEC for two reasons. First of all, this Court's precedent is quite clearly established that the FSH is not legally binding on the Forest Service, even where a provision of the FSH is referred to in a Forest Service regulation. I would refer the Court to Western Radio Services v. SB, 79F3rd 896 at 901 to 902. That's Ninth Circuit, 1996. Second of all, the Forest Service's decision here not to issue a new rod is in keeping with this FSH provision, even assuming that it somehow bound the Forest Service. In the words of the FSH provision, it is consistent with the scope of the supplement for the agency not to issue a new rod, where, as here, the supplement itself establishes that no change to the original rod is necessary. The FSH provision does not require the agency to generate unnecessary paperwork. And I would make one further point in regard to the regulations as opposed to the handbook. Also on the same page, Addendum 12 to the government's brief, you will find 36 CFR 215.11b, which governs when appeals are permitted. This provision makes clear that NEC would not have been entitled to an administrative appeal after the remand, even if the Forest Service had gone through the unnecessary step of issuing a new rod that was unchanged from the original rod. Section 215.11b states that an appeal may be taken from, quote, a new rod after supplementation of an environmental impact statement. However, only that portion of the decision that is changed is subject to appeal. So I think it's quite clear that NEC would not have been entitled to appeal a new but unchanged rod, even if the forest- If they had made a different decision, that would be appealable. Yes. But here the forest supervisor clearly, I think as I alluded to earlier, made it clear that even in light of the supplemental soils supplement to the original EIS, that the project should go forward, that no change to the rod was necessary, and indeed he stressed that the project should proceed. He said at SER 120, referring to the mountain pine beetle epidemic, the forest supervisor found, quote, that the greatest threat to human health and safety, soil productivity, wildlife, and other environmental concerns in the project area is the threat from wildfire due to the massive die-off of the forest, unquote. So I think all of this makes absolutely clear, as I think the court put its finger on. All of this discussion about the remedy boils down to whether NEC was or was not entitled to an administrative appeal under the Forest Services regulations on remand after the final EIS was supplemented through the NEPA process by the soils report, and the answer to that question is no. So I think, I guess I would sum up on this point by saying, as this court established the National Wildlife Foundation versus ESPE, there is no automatic per se vacature rule in the Ninth Circuit that courts retain discretion under the APA to fashion equitable relief, and the district court reasonably exercised that discretion here, and to the extent that there was any conceivable error, that only possible error was the alleged deprivation of this opportunity for a second administrative appeal that NEC alleges, which is not anything it was entitled to begin with. At the time that Judge Malloy took this step, did anybody protest it or complain that it shouldn't have been done that way? I'm just wondering why he did it. I mean, the converse to it didn't make any difference is why didn't he do it the traditional way? What was the reason for doing it this way? The Forest Service did, to the best of my recollection, the Forest Service did not ask Judge Malloy to reconsider the remedy that he imposed, and I think the judge was operating under this exception to the normal vacature rule for exigent circumstances, which clearly applied here. I mean, he knew he was faced with a problem of an immediate threat of a catastrophic wildfire posed by the dead and dying lodgepole pine in the project area, where the record showed that in the year 2008 that particular immediate threat would be at a climax. He was operating in mid-2006, and he knew 2008 was rapidly approaching. And what difference would it make if he had vacated? Why couldn't that be done in time? Well, this, at least in the judge's mind, and I think reasonably so, this provided an expeditious way of getting this soils problem resolved without That's what I'm trying to understand. If it didn't make any difference, what was more expeditious about it? No, this would have been more expeditious than dismissing the case. Why? Because then a whole new lawsuit would have needed to be filed, and who knows how long ginning up a new lawsuit and proceeding through summary judgment and all of that would have taken. Here there was a clear directive. This project is enjoined. You, Forest Service, go back and revisit this question and come back to me if you want to proceed with this project and can convince me to dissolve what is otherwise going to be a permanent injunction. And that responded to the exigencies of the situation and was within the judge's discretion to craft as a remedy. Would you like to hear from Ms. Weiss? Yes, I should stop, Your Honor. I'm sorry. I've taken up some of her time. Good morning. Good morning. May it please the Court, my name is Julie Weiss, and I do represent the intervener appellee in this case, the city and county of Butte-Silverboe. Butte-Silverboe is a consolidated city county located about eight miles north of the project area. And before I tell you a little bit about why Butte-Silverboe has been so interested in this case, I would like to jump right to this equitable remedy argument also. Because the way I view this argument is, did the district court have authority to fashion its equitable remedy in this way? And the court absolutely did. The district court's equitable authority is not constrained the way Mr. Woodbury would have this court believe. Your equitable authority is not constrained the way this argument has been proceeding. I'm not sure the issue is an equitable authority problem. The question is really a statutory NEPA question of whether when there is a new ‑‑ in addition to the EIS, there has to be a new decision because that's what the statute says. I don't know that that has anything to do directly with the authority of the district court, except if he's ordering something that's not legal, i.e., to skip the step of remaking a decision based on the entire new and proper record. It does, Your Honor, and here's why. It's not a NEPA statutory construction argument. It's an APA statutory construction argument. Mr. Woodbury is alleging that under the APA, a record of decision shall be set aside if the court determines that there was an error. And in ASARCO, the Ninth Circuit said that's not the case. Courts have broad equitable powers to go ahead and fashion remedies regardless. In National Wildlife Federation v. SB, the Ninth Circuit said that a district court is not required to set aside every unlawful agency action. There are many instances in which a district court determines that a project is flawed in some respect but allows the project to go forward. But you see, that's not what he did here, which is better and worse. He didn't say, okay, go ahead and do your forest plant. That's not what he did. He enjoined the forest plant. That's right. He was more strict than, for example, in Northern Cheyenne Tribe v. Norton because there the district court determined that, in fact, the EIS was flawed but allowed the record of decision to stay in place and for portions of that project to be implemented. How do you reconcile this with Idaho's Boarding Congress' interpretation of NEPA? Not the APA, but NEPA. That is that NEPA is a procedural statute about timing, and the model is that one is supposed to have all the information in place before you make a decision. So if you don't vacate the decision when you have found a problem, then you are essentially violating NEPA, not the APA, NEPA. Well, Your Honor, I believe Forest Service Counsel answered that question when he cited to the regulations that actually allow supplementation of an environmental impact statement. Environmental impact statements can be supplemented. They often are supplemented. It does not automatically result in a new or modified record of decision. There simply is no ---- Why didn't Idaho's Boarding Congress say otherwise? Your Honor, the exigencies of the case may have been different. In this case, what was facing Judge Malloy was a situation where people and property were at great risk from the conditions in the forest. And that is why Butte Silverboat intervened in this case, because its own municipal watershed, which supplies about 40 percent of the water to the people in Butte, was at risk from the dead and dying trees. Can you explain to me in a concrete way why this decision to proceed one way rather than the other way was a timing difference? Why couldn't the agency have proceeded just as quickly if you had done it the other way? Your Honor, judicial economy, I believe, is the answer there. Because if, in fact, this case had been dismissed, if the district court had said, I vacate the rod and I remand this to the agency ---- Explain to me that he would have had to dismiss the case. But suppose he did. Why would he have to dismiss the case? I don't know why, but suppose he would have had to dismiss the case. So the only difference is a different complaint had to be filed. I'm not seeing why we're talking about anything that was really a time difference. Well, Your Honor, we had actually spent quite a bit of time already on this case. In fact, we had briefed a preliminary injunction that had gone up on appeal. The preliminary injunction, after being fully briefed, had actually been dismissed by this court, remanded back to Judge Molloy. But as a practical matter, the new case would have been filed. It would have been related to Judge Molloy and would have been in the same place. Yes, Your Honor. It would have been back with Mr. Woodbury seeking emergency injunctive relief, and we would have been going back through the briefing process. Judge Molloy was very familiar with this case and the interests that were before him. And you were back with the briefing process. You still had to have a brief about whether the supplementation was adequate or not adequate. I just am not seeing the difference. Well, Your Honor, in Butte-Silverboe's opinion, it was much more judicially economical to proceed in this fashion. And in Judge Molloy's opinion, too. And in Judge Molloy's opinion. And if, in fact, we do view this as an exercise of Judge Molloy's equitable authority, and if Mr. Woodbury felt as though that exercise of his equitable authority to leave that record of decision in place but not to allow the project to go forward, to be more strict than in other cases like the Northern Cheyenne Tribe case, then Mr. Woodbury would have to be arguing that the judge had abused his discretion. He doesn't argue that the judge abused his discretion here. And, in fact, there are other cases in which this type of procedure has been allowed. I would refer you to Four Laws on Board v. Johnson, a case decided a quarter of a century ago. Are there any NEPA cases? That is a NEPA case, Your Honor. The court declined to issue an injunction, even though the BPA had issued certain long-term power contracts without complying with NEPA. And this court said it was acceptable to go ahead and say, agency, you need to go forward and prepare an environmental impact statement but leave those contracts in place in the meantime. What is the status of this on appeal? Has the plan been implemented yet, or is it? Yes, Your Honor, and it's almost complete. There is just a little bit of harvest left to happen. In fact, the major timber sale contract under this project is complete. There is some road closure to happen, some slash work, some of the cleanup work, and then there is a very small area of a separate contract, I think it's about 25 acres, that has not yet happened. So this case is very close to being moot. It's well on its way to mootness, Your Honors. If you have no other questions, we will rest on our briefs. Thanks, Ms. Weiss. Mr. Woodbury, back to you. Okay. On the supplementation process, I encourage the court to get clear on the difference between supplemental information reports and supplemental EISs. The Forest Service, or the supervisor in this case, followed Forest Service regs and rules for determining whether information is significant or not, and if found not to be significant, then you don't have to supplement the EIS. They never called it a supplemental EIS. Because they were following those regulations for supplemental information reports, the same ones from Idaho, we assumed that they didn't call it a supplemental EIS, they just called it a supplemental report, and we kept assuming it was a supplemental information report and didn't learn of this position that it was a supplemental EIS under NEPA until we were in litigation. But the decision-maker clearly didn't feel that way. I thought the name of it was supplemental EIS, no? Sorry? I thought the name of this thing was supplemental EIS. No, they called it a supplemental report or study, but not a supplemental EIS. Like I say, we didn't learn of that until we were in litigation, and again, they were following the rules for supplemental information reports. They cited to them, they followed them, they decided it's not significant, and that's why it's inconsistent with Idaho's court in Congress, where the court said information that was— Excuse me. If you got your facts straight before you argued, the name of the document is Supplemental to the Basin Creek Hazardous Fuels Reduction Project, FEIS. That's the name of the document. Right. It wasn't supplemental EIS. That's not a supplement. The supplemental EIS is not a supplemental EIS. It was not. Maybe then it was just because they were following the supplemental information report guidelines instead of the supplemental—I mean, yes, there was an EIS. They were supplementing it. Whether it was a supplemental EIS or a supplemental information report, we relied on the forest supervisor's own documentation and citation to his rules for supplemental information reports, finding that it wasn't significant new information, and therefore a new decision wasn't required. That's the same thing they did in Idaho's court in Congress, and the court said information that— When did you object to the district court's proceeding? We appealed it, and it was—this court wouldn't accept—this court said it didn't have jurisdiction. Interlocutory appeal. You and you did the interlocutory appeal. Well, we had summary judgment in our favor, but without the vacatur, we appealed that, and we were kicked out for not having—the court said it didn't have jurisdiction because the court still had something to do. So that appeal was dismissed.  Ms. Weiss says the project is almost complete anyway. Is that— I'm sorry? You're right. Ms. Weiss says the project is virtually complete anyway. Is that your understanding, too? That is my understanding. And then we would just—it doesn't moot it, because if there are impacts that should have been considered that weren't considered, like the Pine Martin, then there's still relief available, as the court found in Neighbors of Cutting Mountain. Suppose it were 100 percent complete. It wouldn't be moot? No. That was the position—that was the situation in Neighbors of Cutting Mountain versus Alexander. What could be done? They could go back and tell us the impacts on Pine Martin, and then they can do mitigation for if it turns out that this was not an acceptable impact and that Pine Martin is not viable, then they would have to do some sort of conservation strategy in order to mitigate the results of that. Again, and that's exactly what happened in Neighbors of Cutting Mountain versus Alexander— or Neighbors of Cutting Mountain versus U.S. Forest Service, I believe. I forget which one. But on remand, the court actually said, go out and find them and do some monitoring and let us know how much damage you've done. So, I mean, there's clear authority on that. So, again, the information that wasn't before the decision-maker in the environmental impact statement is always significant if it was required to be before the decision-maker and defined subsequently that it wasn't significant enough to issue a new record of decision flies in the face of NEPA as this court interpreted it in ISC versus Alexander. But we're told that the supplement, whatever one calls it, does include a determination that the decision should not be changed. Why isn't that sufficient? That it should not have been changed. In other words, why doesn't the fact that— if the supplemental document does include a determination that the decision should remain, why isn't that the same as a rod? Because it's saying that the rod is still good, that there's no reason to change the rod. Right. Well, we believe that there is reason to open the decision-making process. That's a different question. But in terms of the procedural issue, why isn't this just the same thing? I suppose because we couldn't appeal it, as we would with a record of decision for any project for a supplemental EIS that issued a new record of decision, we would be able to appeal that. I suppose. And, you know, the other thing practically— Why don't you finish your thought and then your time is up, okay? Okay. Practically speaking, there's a real difference. You know, the assumption seems to be the Forest Service is wed to this decision, which is true in litigation, but is not true in public decision-making process under NEPA, where Congress assumed that political pressure has an effect and litigation raises the political profile of the case. And there's no reason to assume that the Forest Service in an open public decision-making process outside of the cloak of judicial authority would reach the same decision. Okay. Thanks very much. And thank you both, counsel, as well. The matter argued is submitted. We'll stand to recess.
judges: Silverman, McKeown, Berzon